**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0005968
24-SEP-2015
08:03 AM**

NO. CAAP-13-0005968

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
JASON JIM, Defendant-Appellant, and
ROCKY EDWIN and PATTERSON LAWRENCE, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CRIMINAL NO. 12-1-0463)


SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding J., Leonard and Ginoza, JJ.)

Defendant-Appellant Jason Jim (**Jim**) appeals from the "Judgment of Conviction and Probation Sentence)," entered November 18, 2013, in the Circuit Court of the First Circuit[1] (**circuit court**).

On appeal, Jim contends the circuit court erred when it

(1) failed to give a mutual affray instruction to the jury;

(2) precluded Jim from cross-examining the complaining witness, Corbin Thurneau (**Thurneau**), about his history of alcohol consumption; and

(3) precluded Jim from cross-examining Thurneau about Thurneau's MySpace content that Jim alleges shows racial bias.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we conclude Jim's

---

[1]     The Honorable Patrick W. Border presided.

appeal is without merit.

## I. Mutual Affray Instruction

Jim contends the circuit court erred because "it failed to instruct the jury on the lesser included offense of mutual affray because there was evidence to support the lesser charge." Contrary to Jim's argument on appeal, mutual affray is not a lesser included offense of assault in the third degree, but is rather "a mitigating defense that reduces the offense of Assault in the Third Degree to a petty misdemeanor." State v. Kikuta, 125 Hawai'i 78, 95, 253 P.3d 639, 656 (2011). Although the Plaintiff-Appellee State of Hawai'i (**State**) initially charged Jim with assault in the second degree, through agreement of both parties, the forms of verdict were subsequently modified to include assault in the third degree. See Hawaii Revised Statutes (**HRS**) §§ 707-711 (2014 Repl.)[2] and 707-712 (2014 Repl.).[3]

The Hawai'i Supreme Court has held that "the [trial] court must submit a mutual affray instruction to the jury where there is any evidence in the record that the injury was inflicted during the course of a fight or scuffle entered into by mutual consent[.]" Kikuta, 125 Hawai'i at 96, 253 P.3d at 657 (citing

---

[2]  HRS § 707-711 provides, in relevant part:

§ 707-711 **Assault in the second degree.** (1) A person commits the offense of assault in the second degree if:

(a)  The person intentionally or knowingly causes substantial bodily injury to another;

(b)  The person recklessly causes serious or substantial bodily injury to another[.]

[3]  HRS § 707-712 provides, in relevant part:

§ 707-712 **Assault in the third degree.** (1) A person commits the offense of assault in the third degree if the person:

(a)  Intentionally, knowingly, or recklessly causes bodily injury to another person; or

(b)  Negligently causes bodily injury to another person with a dangerous instrument.

(2)  Assault in the third degree is a misdemeanor unless committed in a fight or scuffle entered into by mutual consent, in which case it is a petty misdemeanor.

2

to Hawai'i Jury Instructions Criminal 9.21A).[4] For a mutual affray, "consent may be express[ed], but may also be implied, defined as '[c]onsent inferred from one's conduct rather than from one's direct expression.'" Id. at 96, 253 P.3d at 657. Therefore, under a plain reading of HRS § 707-712(2), "mutual affray requires both parties to have approved of, or agreed to, a fight or scuffle, whether expressly or by conduct." Id.

Jim cites to the fact that Thurneau "stood up" when Jim's co-worker confronted Thurneau and his friend after one of the men "said something" out loud.[5] The mere fact that Thurneau "stood up", without other facts indicating consent to a fight, is not sufficient evidence of consent. See c.f., Kikuta, 125 Hawai'i at 97, 253 P.3d at 658 (finding that Respondent's testimony that Complainant had stood up with crutches then "swung the crutch at him is evidence from which it could be implied that, from that point, Complainant had impliedly consented to a fight or scuffle with Respondent."). Based on the record, including the video of the incident, there is no evidence upon which the circuit court could have found that Thurneau consented to a fight with Jim. See Kikuta, 125 Hawai'i at 96, 253 P.3d at 657. Therefore, the circuit court did not err by not giving a mutual affray instruction to the jury.

II. **History of Alcohol Consumption**

Jim contends the circuit court erred when it limited the defense's cross-examination of Thurneau's history of alcohol consumption. Jim argues that the history of Thurneau's alcohol consumption was relevant to the night of the incident because

---

[4] The Hawai'i Jury Instructions Criminal 9.21A relating to mutual affray assault in the third degree provides that "[w]hen an Assault in the Third Degree instruction is submitted to the jury, the court must also submit a mutual affray instruction and special interrogatory where there is any evidence that the fight or scuffle was entered into by mutual consent."

[5] Jim's opening brief specifically alleges that Thurneau made a "racial comment" to Jim and his co-workers as further evidence of Thurneau's consent to fight. Specifically, the opening brief cites to the Honolulu Police Department's Criminal Investigations Division Closing Report (**closing report**) where co-defendant Rocky Edwin (**Edwin**) states "the victim made racial remarks towards him and his friends." The closing report, however, was not admitted as evidence during the trial and Edwin was not called to testify at Jim's trial. Thus, Jim's reliance on the closing report for evidence that Thurneau made a racial comment to Jim and his co-workers is misguided.

"[i]f that was the first time he drank, he may be extremely drunk. On the other hand, if he usually drank 10 to 12 beers, his answers would allow the jury to assess the level of intoxication and [Thurneau's] credibility."

"It is well recognized that a defendant may cross-examine the witness as to [his/her] drug use and addiction at or near the time of the incident to the extent that it affected [his/her] perception or recollection of the alleged event." State v. Pond, 118 Hawai'i 452, 468, 193 P.3d 368, 384 (2008) (citation and internal quotation marks omitted). "Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness." Id. (citation, internal quotation marks, and emphasis omitted). Even so, a party may not question a witness about his involvement with drugs just to attack the witness's general reliability or veracity. See State v. Sugimoto, 62 Haw. 259, 614 P.2d 386 (1980); see also State v. Sabog, 108 Hawai'i 102, 109, 117 P.3d 834, 841 (App. 2005) ("[D]rug addiction and use may not be introduced to attack a witness's general reliability or veracity.").

During Jim's trial, Thurneau was questioned about how much he had to drink on the night of the incident, to which he replied "three to four beers." Jim's counsel also asked Thurneau, "Have you drank more than four to five beers in your life?" and "How often do you drink?" Thurneau's counsel objected to both lines of questioning on relevance grounds and the circuit court sustained the objection.

During Thurneau's testimony, however, he admitted that he did not remember much of what had occurred on the night of the incident. Jim's counsel acknowledged this fact during his cross-examination of Thurneau:

> [Jim's Counsel:] Is it possible that you don't remember much from that evening because you were drunk?
>
> [Thurneau:] I wouldn't say I was drunk.
>
> [Jim's Counsel:] Then what would you say you were?

> [Thurneau:] I think I had a couple of beers, and then I got pretty well-assaulted. I think that has a lot to do with it.

It is of little consequence whether Thurneau could not remember details about the night because he was intoxicated, as suggested by Jim, or because he was "pretty well-assaulted," as Thurneau suggests. Given that Jim was allowed to elicit testimony from Thurneau about his alcohol consumption on the night of the incident, any probative value of Thurneau's history of alcohol consumption was substantially outweighed by the danger of unfair prejudice and confusing the jury. See Hawaii Rules of Evidence (**HRE**) Rule 403 (1993).[6] Thus, the circuit court did not err in limiting Jim's cross-examination into Thurneau's history of alcohol consumption. See State v. Culkin, 97 Hawai'i 206, 229, 35 P.3d 233, 256 (2001) ("Generally, the scope of cross-examination is within the sound discretion of the trial judge.").

## III. MySpace Content

Jim contends the circuit court erred by not allowing him to cross-examine Thurneau about Thurneau's racial bias, as evidenced through pictures and words on Thurneau's MySpace page. The Hawai'i Supreme Court has held that "[s]o long as a proper foundation is laid, bias can be raised at any time by the witness's testimony or other evidence." State v. Estrada, 69 Haw. 204, 220, 738 P.2d 812, 823 (1987); see HRE 609.1(a) (1993).[7]

---

[6] HRE Rule 403 provides:

Rule 403 **Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[7] HRE Rule 609.1 provides:

Rule 609.1 **Evidence of bias, interest, or motive.** (a) General rule. The credibility of a witness may be attacked by evidence of bias, interest, or motive.

(b) Extrinsic evidence of bias, interest, or motive.
(continued...)

During cross-examination of Thurneau, Jim's counsel attempted to impeach Thurneau with photos and words that were retrieved from Thurneau's MySpace page. Jim argued that because Thurneau indicated he is okay with all races Jim intended "to show the picture of the MySpace photo of [Thurneau] and the Confederate flag" and a document with the word "nigger" as evidence of racial bias. Jim, however, failed to lay a proper foundation to show how Thurneau's MySpace photos were relevant to the issues at trial. Although Jim argues on appeal that the entire incident was spurred by racial comments from Thurneau, as noted *supra*, he failed to place any evidence in the record that such racial comments were made. Given Jim's failure to lay a proper foundation linking Thurneau's alleged racial bias to the night of the incident, the circuit court did not err in preventing Jim from questioning Thurneau about content from Thurneau's MySpace page. See Estrada, 69 Haw. at 220, 738 P.2d at 823.

Therefore,

IT IS HEREBY ORDERED that the "Judgment of Conviction and Probation Sentence," entered November 18, 2013, in the Circuit Court of the First Circuit is affirmed.

DATED: Honolulu, Hawaiʻi, September 24, 2015.

On the briefs:

John Y.U. Choi
for Defendant-Appellant.

Loren J. Thomas
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge

---

[7](...continued)
> Extrinsic evidence of a witness' bias, interest, or motive is not admissible unless, on cross-examination, the matter is brought to the attention of the witness and the witness is afforded an opportunity to explain or deny the matter.